UNITED STATES of America, Plaintiff,

v.

David ASDRUBAL–HERRERA,
Defendant.

No. 78 CR 682.

United States District Court,
N. D. Illinois, E. D.

March 9, 1979.

On Reconsideration June 26, 1979.

**940**

Barry L. Elden, Asst. U. S. Atty., Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for plaintiff.

Richard F. Walsh, Federal Defender Program, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

This matter comes before the Court on the defendant's motion to dismiss the indictment premised on admittedly misleading testimony given to the grand jury. The events leading up to the return of the indictment took a long time to emerge and were highly unusual.

The pleadings [1] in this case disclose that some time in March, 1978, agents of the Bureau of Alcohol, Tobacco and Firearms (ATF) interviewed the defendant. After this interview the ATF agents, apparently in response to a routine inquiry, were told by the Immigration and Naturalization Service (INS) that the defendant was illegally in the United States. In the early morning hours of October 5, 1978, one of the ATF agents, who was not on duty and was not engaged in an investigation of the defendant, happened to see the defendant on the near north side of Chicago. He placed him under arrest [2] and transported him to the Metropolitan Correctional Center. The ATF agent then notified the INS Agent Biesmeyer of the defendant's arrest and INS assumed responsibility for the case.

During business hours of October 5, 1978, another agent of INS, Agent Schiltgen, presented the case to an Assistant United States Attorney, who authorized prosecution. The Assistant United States Attorney did not draft the complaint, but delegated that responsibility to Schiltgen who then drafted it, for Biesmeyer's signature.

The complaint stated, apparently based upon a misunderstanding of the facts of the arrest, *inter alia* :

> *On October 5, 1978, complainant was informed by the Bureau of Alcohol, Tobacco and Firearms that they were holding David Asdrubal-Herrera for questioning of [sic] illegal firearms transactions, the*

---

1. Including: (1) the Complaint signed *under oath* on October 5, 1978, (2) the transcript of the grand jury proceedings on November 2, 1978, (3) the Government's response to the defendant's motions to suppress evidence.

2. Allegedly for a violation of 8 U.S.C. §§ 1325, 1326.

Bureau having been informed by complainant that the defendant was an alien illegally in the United States [sic].

After the complaint was drafted in this form, Biesmeyer signed and swore to its allegations. A hearing was held before the United States Magistrate, probable cause was found and the defendant was bound over to the grand jury.

The United States waited until November 2, 1978, to present the cause to the grand jury. Biesmeyer was unable to appear as a witness, so Agent Schiltgen appeared and testified to the facts surrounding the defendant's prior deportation and his presence in the United States without permission. The Assistant United States Attorney stated that he had no further questions. The foreman then asked if any jurors had questions. A juror asked:

Q: Why did they arrest him on Rush Street?

A: Our service investigator was working in conjunction with the two Alcohol, Tobacco & Firearm Agents. They were looking for him for dealings with illegal transportation of firearms, and INS was looking for him for the deporation [sic] charge and they were out working together that evening. Our service investigator left about five minutes prior to their running into the defendant here, and the two Alcohol, Tobacco & Firearm Agents ran into him at that time.

The grand jury then voted to return this indictment.

The defendant argues that the grand jury was given false and misleading testimony and that they returned an indictment against one they were led to believe was a dealer in firearms and therefore were not the "unbiased" grand jury required by the Fifth Amendment. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). The Government answers that the defendant suffered no prejudice.

■ The use of misleading testimony standing alone, however, does not require dismissal of this indictment on constitutional grounds. See Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958) (Indictment valid, rejecting a rule which would permit challenge to adequacy on competency of evidence); Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (Indictment valid, although based entirely on testimony of persons without firsthand knowledge); United States v. Sullivan, 578 F.2d 121 (5th Cir., 1978) (Indictment based on truthful, but incomplete testimony, omitting the witnesses' own participation in the criminal activity).

■ That the Court retains supervisory power over the grand jury's proceedings is beyond question. See United States v. Chanen, 549 F.2d 1306 (9th Cir., 1977); United States v. Estepa, 471 F.2d 1132 (2d Cir., 1972).

In order to determine whether this Court should exercise its limited supervisory powers and dismiss the indictment it is necessary to examine the Government's explanation for this series of events.

■ The Government explains that the complaint contained false information because Agent Schiltgen, who had no personal knowledge of the arrest, misunderstood the facts leading up to it and when he prepared the complaint this erroneous information concerning the defendant's alleged involvement in illegal firearms transactions was inserted. The fact that Agent Biesmeyer, who had been informed of the arrest by ATF, then signed the complaint, under oath, is less easily explained. The Government, somewhat cavalierly, says, "Compounding Schiltgen's error, Biesmeyer did not read the entire complaint carefully before he signed it . . . ." (emphasis supplied). Apparently, the Government and its agents do not fully appreciate or care to comply with Rule 3 of the Federal Rules of Criminal Procedure, and its requirement that complaints be made under oath before a magistrate. Indeed there is such importance and significance attached to the oath requirement that a complaint not so sworn to is subject to dismissal. Brown v. Duggan, 329 F.Supp. 207 (W.D.Pa., 1971); Pu-

gach v. Klein, 193 F.Supp. 630 (S.D.N.Y., 1961). See also United States v. Blierley, 331 F.Supp. 1182 (W.D.Pa., 1971). The oath requirement certainly does not contemplate that one signing a complaint would sign it before reading it, or without taking care to read it with the sanctity of the oath in mind. This event standing alone however, would not call for the dismissal of the indictment, since the complaint had been made after a valid arrest, and was not the means used to place the defendant in custody. Cf. Gaither v. United States, 134 U.S. App.D.C. 154, 413 F.2d 1061 (1969). However, this complaint was the genesis for Agent Schiltgen's misleading testimony before the grand jury.

The Government, without any further investigation of or review of the facts with either the ATF or INS, waited until the outer limits of the Speedy Trial Act, 18 U.S.C. § 3161(b), to present this case to the grand jury. Biesmeyer was unavailable, so Agent Schiltgen appeared and repeated to them his misunderstanding of the events leading to the arrest of the defendant. The Government's position concerning this testimony is startling. The Government first argues that since Agent Schiltgen's testimony established probable cause, the grand jury was compelled to return the indictment. Its suggestion of compulsion is reminiscent of Chief Judge Pemberton's charge to the Grand Jury in Lord Shaftesbury's case:

And let me tell you, if any of you shall be refractory, and will not find any bill, where there is a probable ground for an accusation, you do therein undertake to intercept justice: and you thereby make yourselves criminals and guilty, and the fault will lie at your door. 8 How.St.Tr. 770 (1681).

■ The grand jury, forever establishing its independence, refused to indict and returned its now famous verdict of "ignoramus". This inherent right of the grand jury remains firmly imbedded in law. Just as a prosecutor can, in the exercise of discretion, decline prosecution in the first instance, a grand jury can return a true bill or a no bill as they deem fit. Wood v. Georgia, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962); Hale v. Henkel, 201 U.S. 43, 59–66, 26 S.Ct. 370, 50 L.Ed. 652 (1906); Ex Parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). See also, United States v. Dionisio, 410 U.S. 1, 16–17, 93 S.Ct. 764, 35 L.Ed.2d 67 (1972).

In this case the grand juror, described by the Government as "overly inquisitive" reflected an interest in the circumstances of the arrest. The answer received certainly implied that the defendant was something more than an alien illegally in the United States. The jury was led to believe that the defendant was engaged in other illegal activity. Speculation as to the motivation for the question would serve no legitimate purpose here, however it is entirely possible that if the grand jury had learned the facts of the arrest they could have inquired as to whether there were administrative remedies available to the Government, rather than the course of indictment, trial and possible incarceration. Therefore, this grand jury was not "independent and informed" Wood v. Georgia, 370 U.S. 375, 390, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962), of all the facts and circumstances, but was misled, by the testimony of the Government's witness.

■ This Court recognizes that its inherent supervisory power is limited and should be exercised rarely and with extreme caution, United States v. Chanen, 549 F.2d 1306 (9th Cir., 1977), cert. denied, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977); United States v. Poole, 379 F.2d 645 (7th Cir., 1967), and also recognizes that not all infirmities, irregularities and prejudicial conduct require its exercise. United States v. Bruzgo, 373 F.2d 383 (3d Cir., 1967); Laughlin v. United States, 128 U.S.App. D.C. 27, 385 F.2d 287 (1967); Coppedge v. United States, 114 U.S.App.D.C. 79, 311 F.2d 128 (1962). The Court is also aware that this case does not present issues of perjured testimony, United States v. Basurto, 497 F.2d 781 (9th Cir., 1974); willful suppression of favorable testimony, United States v. Samango, 450 F.Supp. 1097 (D.Ha-

waii, 1978); impermissible comment on the privilege against self incrimination, *United States v. DiGrazia*, 213 F.Supp. 232 (N.D. Ill., 1963) or other singularly egregious conduct. However, when the totality of circumstances is considered, the negligent conduct of the United States and its agents certainly polluted "the waters of justice", *Mesarosh v. United States*, 352 U.S. 1, 14, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956), and the action which this Court takes today is necessary, "to protect the integrity of the judicial process." *United States v. Leibowitz*, 420 F.2d 39, 42 (2d Cir., 1969).

When presenting a case to the grand jury, the United States Attorney stands in a difficult position. On one hand he is a representative of the Executive seeking an indictment, on the other he is the representative of the United States who is looked to by the grand jury for an unbiased presentment. The grand jury places great trust in the United States Attorney. In this case they did not receive proper guidance. Their trust was misplaced. *Berger v. United States*, 295 U.S. 78, 88–89, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

Accordingly, the defendant's motion is granted, the indictment is dismissed.

## ON RECONSIDERATION

The government has petitioned for a reconsideration of this Court's order dismissing the indictment. The Government argues that its conduct in this case was negligent rather than deliberate and therefore it should not suffer the sanction of dismissal. It is not the motive of the government which is controlling, it is the effect of its actions and the Court can perceive no reason to compel the defendant to proceed to trial *on this indictment.* If the government chooses to present this cause to another grand jury and ask that body to return a valid indictment, it is, of course, free to do so.