914 So.2d 1015 (2005)
Brian CRAIN, Petitioner,
v.
STATE of Florida, Respondent.
No. 5D05-778.
District Court of Appeal of Florida, Fifth District.
November 18, 2005.
*1017 Robert Wesley, Public Defender and Nicole K.H. Maldonado, Assistant Public Defender, Orlando, for Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee and Bonnie Jean Parrish, Assistant Attorney General, Daytona Beach, for Respondent.

EN BANC
SAWAYA, J.
The issue we address in this case is whether an arrest affidavit to secure a warrant for violation of probation is valid if it is verified under section 92.525, Florida Statutes (2003), but not sworn to before a person authorized to administer oaths. In Jackson v. State, 881 So.2d 666 (Fla. 5th DCA 2004), we held that an affidavit to secure a warrant for violation of probation pursuant to section 948.06(1), Florida Statutes (2002), must be sworn to before a person authorized to administer oaths and that verification under section 92.525 is not appropriate. We consider this case en banc to provide additional reasoning for our decision in Jackson and to clarify that our holding in that case does not prohibit application of the good faith exception to the exclusionary rule to warrants obtained with affidavits verified under section 92.525. We will briefly discuss the factual and procedural background of this case, followed by a discussion of the oath requirement for arrest affidavits and the good faith exception.

Factual And Procedural Background
After pleading guilty, Brian Crain was placed on probation as part of his sentence. When he failed to comply with certain conditions of his probation, an affidavit alleging the violations was filed. The affidavit was verified pursuant to section 92.525, Florida Statutes (2003), but not sworn to before a person authorized to administer oaths. Crain filed a Petition for Prohibition claiming that the affidavit was defective because it was not properly sworn to and, therefore, the warrant that was issued pursuant thereto was also defective. Both the affidavit and warrant were secured prior to the expiration of Crain's probationary period. In the petition, which was filed after the probationary period expired, Crain asserts that since the affidavit and warrant are defective and his probationary period has expired, the trial court does not have jurisdiction to proceed with the violation hearing and he may not be held accountable for his violations.
We adhere to the view adopted in Jackson and, therefore, agree with Crain that the affidavit is defective because it was not sworn to before a person authorized to administer oaths. However, we are also of the view that the defective affidavit does not vitiate the warrant based on the good faith exception to the exclusionary rule. We believe that Crain's petition should be denied because it is the issuance of the warrant prior to the expiration of the probationary period that vests the trial court with jurisdiction, not the filing of the affidavit. To explain our views, we begin with a discussion of the oath requirement of the affidavit under Florida and federal law.

An Arrest Affidavit Must Be Sworn To Before A Person Authorized To Administer Oaths

A. Florida Law
Section 948.06(1), Florida Statutes *1018 (2003),[1] governs violation of probation proceedings and provides that "[a]ny committing magistrate may issue a warrant, upon the facts being made known to him or her by affidavit of one having knowledge of such facts ... [and] ... [u]pon the filing of an affidavit alleging a violation of probation or community control and following issuance of a warrant under s. 901.02, the probationary period is tolled until the court enters a ruling on the violation." § 948.06(1), Fla. Stat. (2003) (emphasis added). Because section 901.02, Florida Statutes, specifically governs the issuance of arrest warrants, section 948.06(1) requires an affidavit to establish probable cause for the issuance of an arrest warrant for the probation violator. The date an arrest warrant is issued, which is the date it is signed by a judge, is significant because that is the trigger that tolls the running of the probationary period.[2] Therefore, if the arrest warrant in the instant case is valid, Crain must be held accountable for his violations because it is not disputed that the warrant was issued prior to the expiration of the probationary period.
We held in Jackson that section 92.525 does not apply to an affidavit to secure an arrest warrant. That statute applies "[w]hen it is authorized or required by law, by rule of an administrative agency, or by rule or order of court that a document be verified by a person...." § 92.525(1), Fla. Stat. (2003). Verification means that the individual executes the required document with an oath or affirmation that the information contained therein is trueit does not require that the document be sworn to before an individual authorized to administer oaths. § 92.525(4)(c), Fla. Stat. (2003); Mieles v. South Miami Hosp., 659 So.2d 1265 (Fla. 3d DCA 1995); State, Dep't of Highway *1019 Safety & Motor Vehicles v. Padilla, 629 So.2d 180 (Fla. 3d DCA 1993), review denied, 639 So.2d 980 (Fla.1994). Section 948.06(1), on the other hand, does not provide for verification; it specifically requires an affidavit. "An affidavit is by definition a statement in writing under an oath administered by a duly authorized person...." Youngker v. State, 215 So.2d 318, 321 (Fla. 4th DCA 1968) (citing Black's Law Dictionary, (4th ed.)). "An oath is an unequivocal act, before an officer authorized to administer oaths, by which the person knowingly attests to the truth of a statement and assumes the obligations of an oath." State v. Johnston, 553 So.2d 730, 733 (Fla. 2d DCA 1989) (citations omitted); see also Youngker, 215 So.2d at 321 ("An oath may be undertaken by any unequivocal act in the presence of an officer authorized to administer oaths by which the declarant knowingly attests the truth of a statement and assumes the obligation of an oath.") (citation omitted). Section 92.50, Florida Statutes, also indicates that an affidavit must be sworn to before a person authorized to administer oaths. It provides in pertinent part that
[o]aths, affidavits, and acknowledgments required or authorized under the laws of this state (except oaths to jurors and witnesses in court and such other oaths, affidavits and acknowledgments as are required by law to be taken or administered by or before particular officers) may be taken or administered by or before any judge, clerk, or deputy clerk of any court of record within this state, including federal courts, or before any United States commissioner or any notary public within this state.
§ 92.50(1), Fla. Stat. (2003).
Hence, in order to secure an arrest warrant under section 948.06(1), the affidavit must be sworn to before a person authorized to administer oaths. In addition to the statutory provisions and case law discussed above, the federal and Florida constitutions and pertinent rules of court compel this conclusion. For example, the Fourth Amendment to the United States Constitution provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
Article I, section 12, of the Florida Constitution, relating to search and seizure, states that "[n]o warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained." This constitutional requirement has been codified in Florida Rule of Criminal Procedure 3.120, which provides in pertinent part:
Each state and county judge is a committing judge and may issue a summons to, or a warrant for the arrest of, a person against whom a complaint is made in writing and sworn to before a person authorized to administer oaths, when the complaint states facts that show that such person violated a criminal law of this state within the jurisdiction of the judge to whom the complaint is presented. The judge may take testimony under oath to determine if there is reasonable ground to believe the complaint is true.
(Emphasis added). The committee notes appended to this rule state that in 1972 the rule was "[a]ltered to incorporate the provision for testimony under oath formerly contained in rule 3.121(a), and authorize *1020 the execution of the affidavit before a notary or other person authorized to administer oaths." In Kephart v. Regier, 30 Fla. L. Weekly S182, ___ So.2d ___, 2005 WL 673681 (Fla. Mar. 24, 2005), the court reiterated that the requirements of Rule 3.120, which requires the oath be administered by a person authorized to administer oaths, conforms to the constitutional dictates previously mentioned:
In order to obtain a warrant for an arrest, a law enforcement officer must present a written affidavit or sworn complaint to the committing magistrate demonstrating probable cause to believe that the accused has violated the criminal law of the State. See Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); Fla. R.Crim. P. 3.120. Rule 3.120 conforms to the Fourth Amendment requirement that probable cause be supported by "oath or affirmation" and to the procedural requirements discussed in Gerstein v. Pugh. See art. I, § 12, Fla. Const.
(Emphasis added) (footnote omitted).[3]
To allow verification under section 92.525 without an oath administered by an individual authorized to administer oaths would essentially vitiate the provisions of Rule 3.120. "It is almost axiomatic that statutes and rules authorizing searches and seizures are strictly construed and affidavits and warrants issued pursuant to such authority must meticulously conform to statutory and constitutional provisions." State v. Tolmie, 421 So.2d 1087, 1088 (Fla. 4th DCA 1982) (citations omitted). The courts have consistently adhered to this rule of strict compliance for quite some time.[4] Accordingly, absent a valid exception to the provisions of Rule 3.120, the *1021 specific requirement that the affidavit be sworn to before an individual authorized to administer oaths must be strictly complied with.
We are aware of the decision in State v. Shearer, 628 So.2d 1102 (Fla.1993), wherein the court held that verification under section 92.525 was sufficient to comply with the oath requirement under Florida Rule of Criminal Procedure 3.850. However, as we have previously stated, rules governing search and seizure must be strictly complied with because of the liberty interests implicated by the seizure of a person pursuant to an arrest warrant. We also note that the district courts have not extended the scope and application of Shearer beyond postconviction motions.
Federal law is in accord with Florida law, as we will explain next.

B. Federal Law
The federal courts and their rules of criminal procedure similarly require that a complaint or affidavit utilized to secure an arrest warrant be sworn to before a person authorized to administer oaths. Rule 3, Federal Rules of Criminal Procedure, specifically provides:
The complaint is a written statement of the essential facts constituting the offense charged. It must be made under oath before a magistrate judge or, if none is reasonably available, before a state or local judicial officer.
This rule implements the requirements of the Fourth Amendment. Here is what the Court has said about Rule 3:
Criminal Rules 3 and 4 provide that an arrest warrant shall be issued only upon a written and sworn complaint (1) setting forth `the essential facts constituting the offense charged,' and (2) showing `that there is probable cause to believe that (such) an offense has been committed and that the defendant has committed it * * *.' The provisions of these Rules must be read in light of the constitutional requirements they implement. The language of the Fourth Amendment, that `* * * no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing * * * the persons or things to be seized * * *,' of course applies to arrest as well as search warrants.
Giordenello v. United States, 357 U.S. 480, 485-86, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958) (footnote omitted) (citations omitted). Hence, Rule 3 was adopted to fulfill the oath requirement of the Fourth Amendment.
Just as the Florida courts require strict compliance with Rule 3.120, which requires that an arrest affidavit be sworn to before a person authorized to administer oaths, the federal courts require strict compliance with the requirement of Rule 3. See Giordenello; Brown v. Duggan, 329 F.Supp. 207 (W.D.Pa.1971). Specifically, the courts have been very strict about the requirement that the complaint or arrest affidavit be sworn to before a magistrate judge. See United States v. Asdrubal-Herrera, 470 F.Supp. 939, 941-42 (N.D.Ill. 1979) ("Apparently, the Government and its agents do not fully appreciate or care to comply with Rule 3 of the Federal Rules of Criminal Procedure, and its requirement that complaints be made under oath before a magistrate. Indeed there is such importance and significance attached to the oath requirement that a complaint not so sworn to is subject to dismissal.") (citations omitted); United States v. Blierley, 331 F.Supp. 1182, 1183 (W.D.Pa.1971) ("The complaint is insufficient to issue warrants of arrest. The complaint is not sworn to before a commissioner or other officer empowered to commit persons charged with offenses against the United States. Rule *1022 3, Federal Rules of Criminal Procedure, 28 U.S.C.A. This omission is sufficient ground to refuse to issue warrants.") (citations omitted); Pugach v. Klein, 193 F.Supp. 630, 638-39 (S.D.N.Y.1961) ("Turning now to the merits of the `complaint,' it is apparent of its face that it fails to comply with the requirements of Rule 3, Federal Rules of Criminal Procedure, 18 U.S.C.A., in that it was not `made upon oath before a commissioner or other officer empowered to commit persons charged with offenses against the United States.' Rather, it was made before a notary public of Bronx County. That defect alone would be sufficient to refuse to issue the warrants.") (citation omitted); United States ex rel. Spader v. Wilentz, 25 F.R.D. 492, 494 (D.N.J.1960) ("It is essential that the criminal complaint be made on oath before a judicial officer `empowered to commit persons charged with offenses,' because it is he who `must judge for himself the persuasiveness of the facts relied upon by' the complaint `to show probable cause ....'") (quoting Giordenello, 357 U.S. at 486, 78 S.Ct. 1245), affirmed, 280 F.2d 422 (3d Cir.), and cert. denied, 364 U.S. 875, 81 S.Ct. 120, 5 L.Ed.2d 97 (1960).
The importance of the requirement that the arrest affidavit or complaint be sworn to before the magistrate judge was explained by the court in Brown:
The interpretation to be given Criminal Rules 3 and 4 was set out by the Supreme Court in Giordenello v. United States, 357 U.S. 480, 485-486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). There the Court pointed out that Rules 3 and 4 were to be read so as to afford Fourth Amendment protection. Bearing this in mind, we hold that the requirements of Rules 3 and 4 must be strictly complied with so as to preclude the mischief which would result if arrest warrants were issued upon less than substantial grounds. Casual accusations cannot be the basis for a person's being deprived of his liberty. The criminal process of the courts shall be invoked only if the complaining party goes before an officer having power to order persons committed for offenses against the United States. Before such an officer the complainant shall swear to the allegations of his complaint. The importance of personal appearance is apparent both from the Fourth Amendment and Rule 4. The officer receiving the complaint must make a determination of probable cause, and in the event he finds probable cause he is required under Rule 4 to issue criminal process, i.e., to order the person of the accused seized. Prior to his exercising this power, the issuing officer is required to personally examine the complainant with regard to both the information contained in the complaint and the source of that information.
Brown, 329 F.Supp. at 209-10 (footnotes omitted); see also Gaither v. United States, 413 F.2d 1061, 1076 (D.C.Cir.1969) ("Because pre-arrest complaints are thus designed to play an important role in the protection of Fourth Amendment rights, they must be sworn before a judicial officer.") (footnote omitted).
Accordingly, we believe the issue here is whether the failure of the affiant to take an appropriate oath necessarily renders the arrest warrant invalid. The answer to this question lies in the good faith exception to the exclusionary rule.

The Good Faith Exception
Article I, section 12, of the Florida Constitution, as amended in 1982, requires that we follow precedent established by the United States Supreme Court relating to search and seizure. The commentary to the 1982 amendment states that the amendment was necessary to modify the exclusionary rule and to allow adherence *1023 by the Florida courts to the good faith exception adopted by the federal courts. See State v. Butler, 655 So.2d 1123, 1125 (Fla.1995) ("This Court is bound, on search and seizure issues, to follow the opinions of the United States Supreme Court regardless of whether the claim of an illegal arrest or search is predicated upon the provisions of the Florida or United States Constitutions.") (citations omitted); Bernie v. State, 524 So.2d 988, 992 (Fla.1988) ("[W]e hold ... the 1982 amendment to article I, section 12, of the Florida Constitution brings this state's search and seizure laws into conformity with all decisions of the United States Supreme Court rendered before and subsequent to the adoption of that amendment....").
In United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the United States Supreme Court decided that where police officers act in good faith upon a warrant that they have no reason to believe is defective or invalid, the exclusionary rule of the Fourth Amendment to the United States Constitution would not prevent admission of evidence recovered pursuant to that warrant. In Johnson v. State, 660 So.2d 648 (Fla.1995), cert. denied, 517 U.S. 1159, 116 S.Ct. 1550, 134 L.Ed.2d 653 (1996), the Florida Supreme Court applied the good faith exception enunciated in Leon to an arrest warrant secured by an arrest affidavit that did not have an appropriate oath. When the officer appeared before the judge to secure the warrant, an oath was administered that the information in the affidavit was true "to [the officer's] best knowledge and belief" or "to the best of [the officer's] knowledge." Id. at 653. Addressing the fact that the affidavit did not contain an oath and the defendant's assertion that the oath administered was not a valid oath to secure an arrest warrant, the court in Johnson held that the affidavit and warrant met the good faith exception adopted in Leon, explaining:
Turning to the true issue, we find that it must be governed by the good-faith exception announced in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), which is binding upon us under article I, section 12 of the Florida Constitution. Perez v. State, 620 So.2d 1256 (Fla.1993). The pertinent holding of Leon was stated in the following terms:
It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.... Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

Leon, 468 U.S. at 921, 104 S.Ct. at 3419. This conclusion rests on the principle that the exclusionary rule is meant to deter abuses by law enforcement, not to use law enforcement as the whipping boy for the magistrate's error. Officers are not expected to possess a lawyer's understanding of the nuances of Fourth Amendment law. Nor are they permitted to second guess the validity of a facially sufficient warrant.
Any errors here clearly were technical and were committed solely by the magistrate, not by the officers. We hold that the officers acted in good faith and fall within the good-faith exception of Leon.

Johnson, 660 So.2d at 654.
The underlying reason for the good faith exception is that the purpose for the exclusionary *1024 rule, which is deterrence of police misconduct, will not be furthered when the police act in good faith in securing the warrant. See Leon, 468 U.S. at 918-19, 104 S.Ct. 3405. Hence, although statutes and rules governing search and seizure must be strictly complied with, as we have previously noted, the good faith exception alleviates the harsh consequences of noncompliance when the police act in good faith in securing the warrant by a defective affidavit.
"The test for good faith is `whether a reasonably trained officer would have known that the search was illegal despite the magistrate's authorization.'" Johnson v. State, 872 So.2d 961, 964 (Fla. 4th DCA 2004) (quoting Leon, 468 U.S. at 923 n. 23, 104 S.Ct. 3405). For example, the courts will refuse to apply the good faith exception in instances where false or misleading information is included in the affidavit, see Leon; where information that would prevent a finding of probable cause is omitted, see State v. Van Pieterson, 550 So.2d 1162 (Fla. 1st DCA 1989); or where "a warrant may be so facially deficient  i.e., in failing to particularize the place to be searched or the things to be seized  that the executing officers cannot reasonably presume it to be valid." Leon, 468 U.S. at 923, 104 S.Ct. 3405. The instant case does not involve false and misleading information that was included in the affidavit and there is absolutely nothing in the record to suggest that relevant information that would negate the existence of probable cause was excluded. Moreover, Crain does not suggest that the substantive allegations in the affidavit failed to establish probable cause for his arrest. In fact, there is absolutely nothing in the record before this court that would remotely suggest police misconduct or that the police in any way acted in bad faith in securing the warrant for Crain's arrest.
Here, the police erroneously relied on the provisions of section 92.525 to validate the verification contained in the affidavit. If the verification was improper, the judge should not have signed the warrant. Moreover, this court has consistently applied the good faith exception when, as in the instant case, the warrant is "regular on its face and the affidavit upon which it was based was not so lacking in indicia of probable cause that the officer executing the warrant could not with reasonable objectivity rely in good faith on the magistrate's probable cause determination and on the technical sufficiency of the warrant." State v. Harris, 629 So.2d 983, 984 (Fla. 5th DCA 1993); see also State v. Wildes, 468 So.2d 550, 551 (Fla. 5th DCA 1985). Based on the facts and circumstances present in the record before us, a reasonably trained officer would not have known that the affidavit was improper despite the judge's signature on the warrant. We conclude, therefore, that the good faith exception clearly applies and that the trial court erred in dismissing the warrant.

Conclusion
The arrest affidavit in the instant case was defective because it was not properly sworn to before a person authorized to administer oaths. Nevertheless, the good faith exception clearly applies and the trial judge should not have dismissed the warrant. While we agree with the decision in Jackson that section 92.525 should not apply to affidavits executed to secure an arrest warrant pursuant to section 948.06, the remedy of dismissal applied in Jackson is inappropriate in instances where the good faith exception applies. Because the instant case is one of those instances, we conclude that the trial court has jurisdiction to proceed with the violation of probation proceedings, and Crain should be held to answer for his alleged violations. Accordingly, *1025 the petition for writ of prohibition is denied.
PETITION DENIED.
SHARP, W., PETERSON, THOMPSON and PALMER, JJ., concur.
GRIFFIN, J., concurs and concurs specially, with opinion, in which SAWAYA and PALMER, JJ., concur.
TORPY, J., concurs in result only, with opinion, in which PLEUS, C.J., ORFINGER and MONACO, JJ., concur.
GRIFFIN, J., concurring and concurring specially.
Everyone agrees that section 948.06(1), Florida Statutes, requires an "affidavit" to obtain an arrest warrant for a violation of probation. An "affidavit," as that word is commonly understood, is a declaration of facts under oath that is executed before an officer authorized to administer oaths. Black's Law Dictionary 54 (5th ed.1979). The question is what satisfies that requirement? Judge Torpy, in his concurring opinion, contends that section 92.525 allows any requirement of an "affidavit" in Florida Statutes to be satisfied by verifying the document in the manner set forth in section 92.525(2). I do not dispute that the legislature has the power to alter the meaning of the word "affidavit" by statute if it chooses, or even to alter beyond recognition how an affidavit may be executed. As far as I can tell, however, it has not so chosen. In my view, section 92.525 says nothing about how a statutory requirement of an affidavit may be met.
Section 92.50, Florida Statutes, entitled: "Oaths, affidavits and acknowledgements, who may take or administer: requirements." provides:
(1) IN THIS STATE.  Oaths, affidavits and acknowledgements required or authorized under the laws of this State ... may be taken or administered by or before any judge, clerk, or deputy clerk of any court of record within this state, including federal courts, or before any United States Commissioner or any notary public within this state. The jurat, or certificate of proof or acknowledgement, shall be authenticated by the signature and official seal of such officer or person taking or administering the same; however, when taken or administered before any judge, clerk, or deputy clerk of a court of record, the seal of such court may be affixed as the seal of such officer or person.
Section 92.525, on the other hand, deals with the verification of documents. Section 92.525 tells us plainly what it covers:
(1) When it is authorized or required by law, by rule of an administrative agency, or by rule or order of court that a document be verified by a person, the verification may be accomplished in the following manner:
(a) Under oath or affirmation taken or administered before an officer authorized under s. 92.50 to administer oaths; or
(b) By the signing of the written declaration prescribed in subsection (2).
Section 92.525 describes only what to do when a statute, rule or order requires or authorizes a document to be verified. The statute does not say how a statutory requirement for an affidavit may be satisfied. The essential premise of Judge Torpy's concurring opinion is that whenever an affidavit is required, section 92.525 allows the substitution of a verification. This is a misreading of the statute.
Section 92.525(4)(c) explains what is meant by "the requirement that a document be verified." It has to be signed or executed and it must state under oath that the facts recited are true. There is no reference to an "affidavit" nor is there any *1026 reference to the requirement of an officer authorized to administer oaths. The legislature's concept of a "verified document" does not include the requirement of execution before an authorized person. This is a pretty good clue that when the legislature is explaining in section 92.525 the ways to verify a document, it is not talking about affidavits.
The only reference in the entire statute to the word "affidavit" is in section (4)(b), the definition of the word "document." Recall that in subsection (1) of this statute, the word "document" appears:
When it is authorized or required by law, by rule of an administrative agency, or by rule or order of court that a document be verified by a person, the verification may be accomplished in the following manner....
Subsection (4)(b) defines the word "document" to mean:

[A]ny writing including, without limitation, any form, application, claim, notice, tax return, inventory, affidavit, pleading or paper.
To me, this definition signals that any writing is equivalent to the word "document" and forms, applications, claims, notices, tax returns, inventories, affidavits, pleadings or papers are illustrative of the documents embraced by the term "any writing." These words should, therefore, be interchangeable, as in "whenever it is authorized by law, administrative agency or by rule or order of court that [any writing] [any form] [any application] [any claim] [any notice] [any tax return] [any inventory] [any affidavit] [any pleading] or [any paper] be verified," the verification can be accomplished in either of the two ways discussed above. How this statutory provision has morphed into the interpretation that any statutory or rule requirement for an affidavit can be satisfied by either an oath or a declaration under penalty of perjury simply eludes me. It is not what the statute says.
This alternative interpretation of section 92.525 is apparently based in part on the notion that if the word "affidavit" is substituted for "document" or "any writing", the statute becomes absurd as there could never be a statutory or rule requirement for a "verified affidavit." But, in fact, there is at least one reference in Florida Statutes to a "verified affidavit," in section 932.703, Florida Statutes (2004), the statute dealing with forfeitures. Oddly, there are other statutes, such as section 409.256(2)(a)(5), Florida Statutes, (Paternity) that allow alternatively either (1) an affidavit or (2) "a written declaration as provided in section 92.525(2)." Why would the legislature need to authorize a section 92.525(2) declaration as an alternative to an affidavit if, by the terms of 92.525 itself, the declaration in 92.525(2) already always satisfies the affidavit requirement? The answer, I suggest, is because 92.525 does not satisfy the "affidavit" requirement; it only specifies how a "verification" requirement can be met.
If section 92.525 allows a verification to be substituted for the requirement that an affidavit be executed before an officer authorized to administer oaths, it may be the most indirect, casual and recondite means of effectuating such a significant change in Florida law the Florida legislature has ever employed. There can be no doubt that section 92.525 is a statute of general application. If Judge Torpy's interpretation is correct, it applies not only to affidavits for arrest for probation violation, it applies universally to all affidavits.
Although I have not personally examined them all, my Westlaw search turned up over 1,100 references to "affidavits" in Florida Statutes that do not have an associated express requirement that a document be "executed" "before a person authorized *1027 to administer oaths." If Judge Torpy is correct, these "affidavits" can be replaced by verification.
Judge Torpy relies primarily on two cases, State v. Shearer, 628 So.2d 1102 (Fla.1993), and Goines v. State, 691 So.2d 593 (Fla. 1st DCA 1997), neither of which was cited by the State in Jackson. Although we identified them both in our own research and considered them both in deciding Jackson, we referred only to Goines in the Jackson opinion. We said that the stated rationale for the Goines decision was not clear enough to warrant a declaration of conflict. The Goines opinion recited that the defendant's issue on appeal was that the affidavit had not been made under oath. The court found that because it was verified, there was no merit to her argument. This is a correct statement of the law. A verified document is made "under oath" but because it is not executed before a person authorized to administer oaths, it is not an affidavit. The Goines court went on to say that:
Pursuant to section 92.525, Florida Statutes (1995), such a statement constitutes "verification" of any document "authorized or required by law, by rule of an administrative agency, or by rule or order of court" to be "verified," including "affidavits."
Id. That sentence (even though circular) is also true, but it tells us nothing about how to satisfy the statutory requirement of an affidavit and it certainly does not say that where an affidavit is required a verification will do.
As for Shearer, that case was concerned with the 1993 version of Florida Rule of Criminal Procedure 3.850(c), which required a motion for post-conviction relief to be made "under oath," and the form contained in Florida Rule of Criminal Procedure 3.987, which specified that the motion had to be sworn to before a notary public or other official authorized to administer an oath. Shearer has nothing to do with "affidavits." The point of Shearer was whether the verification procedure set out in rule 92.525 adequately satisfied the court's goal in requiring a sworn 3.850 motion, which was to expose the convicted individual to a prosecution for perjury if statements made in the motion were false. Shearer is confusing because the execution requirements under the two rules were not symmetrical. One merely required an oath; the other specified a notary. I concede that the court did say that section 92.525, Florida Statutes authorizes the penalty of perjury declaration in the verification statute to substitute for a "notarized oath." In fact, however, section 92.525 only authorizes the substitution of a penalty of perjury declaration where there is a requirement of an "oath," not a "notarized oath." This is true because the element of execution before a notary is not included in the statutory definition of a verification and because a notarized oath must satisfy the requirements of section 92.50, not 92.525. What was important to the Shearer court, however, was not the notarized versus not-notarized distinction, but whether the penalty of perjury declaration contained in section 92.525 solved the concerns they expressed in Gorham v. State, 494 So.2d 211 (Fla.1986), and Scott v. State, 464 So.2d 1171 (Fla.1985). Concluding that the statutory declaration in the verification was sufficient to accomplish their purpose, they amended the Rule 3.987 form.
Finally, in Judge Torpy's concurring opinion, there is extensive discussion of federal fourth amendment jurisprudence applying 28 U.S.C., section 1746. Judge Torpy says the federal statute is "similar" to section 92.525, but they, in fact, are dissimilar in one critical respect, and it is *1028 that difference that illustrates my point. The federal statute says:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated....
The federal statute says that a verification can substitute when a federal statute calls for an affidavit. The Florida statute does not.
SAWAYA and PALMER, JJ., concur.
TORPY, J., concurring in result only.
I agree that we should not grant the writ of prohibition, but I do not agree with the conclusion that the "affidavit" was defective. I think our decision in Jackson v. State, 881 So.2d 666 (Fla. 5th DCA 2004) was wrong. It conflicts with State v. Shearer, 628 So.2d 1102 (Fla.1993), and Goines v. State, 691 So.2d 593 (Fla. 1st DCA 1997), wherein the first district correctly settled this issue many years ago. I also disagree with the conclusion that a notarized arrest affidavit is required by the seizure clauses of the federal and state constitutions and rules of criminal procedure. Finally, assuming the majority is correct that the affidavit was defective, I disagree that the "good faith exception" to the exclusionary rule applies here.
The distinction between this case and Jackson is that, in Jackson, our court permitted the state to cure the purportedly defective affidavit by filing an amended affidavit after remand. Thus, the prosecution was delayed but not thwarted. Jackson did not expressly address the situation presented here. In this case, after Petitioner challenged the affidavit below, the state filed an amended, notarized affidavit. The amended affidavit was filed after Petitioner's probation term had expired. The lower court ruled that the original affidavit was defective and dismissed the warrant, citing Jackson. However, again in reliance upon Jackson, it determined that it had jurisdiction to proceed under the amended affidavit, even though it was filed after Petitioner's probation had expired. The issue as framed by Petitioner here, therefore, is whether the lower court has jurisdiction to proceed on the amended affidavit. The majority implicitly concludes that, because the amended affidavit was filed too late to invoke the statutory tolling provisions of section 948.06(1) (2005), Florida Statutes, the amended affidavit was of no effect. I agree with this conclusion.
Section 948.04(2), Florida Statutes (2005), provides that a probationer is entitled to be released from probation upon expiration of his or her term. This period may be extended under the tolling provision of section 948.06(1), "upon the filing of an affidavit alleging a violation of probation... and following issuance of a warrant." (Emphasis added). To invoke the tolling provision, however, the affidavit must be filed and warrant issued before the term of probation expires. Stambaugh v. State, 891 So.2d 1136, 1139 (Fla. 4th DCA 2005). Therefore, the amended affidavit filed after Petitioner's probation term expired was ineffective to confer jurisdiction *1029 on the lower court, and the lower court erred by concluding otherwise.[5]
The foregoing notwithstanding, pursuant to the "tipsy coachman" rule, we should consider whether the lower court was correct in its determination that it may proceed, albeit not for the reason given by the trial judge, but because the original affidavit and warrant were legally sufficient. To answer this question it is necessary to determine whether a verified document, in affidavit form, given under penalty of perjury, is a statutorily authorized equivalent of an "affidavit" under section 948.06(1). This is purely an issue of statutory construction and the first point at which I take a divergent path from the majority. See Gearhart v. State, 885 So.2d 415, 417 (Fla. 5th DCA 2004) (probation is creature of statute).
Although by most legal definitions, an affidavit is a statement made under oath before a notary or other authorized official, section 92.525(1)(b), Florida Statutes (2005), "provides that a signed declaration can substitute for a notarized oath." Shearer, 628 So.2d at 1102. Section 92.525 states in pertinent part as follows:
(1) When it is ... required by law ..., or by rule or order of court that a document be verified by a person, the verification may be accomplished in the following manner:
(a) Under oath or affirmation taken or administered before an officer authorized under s. 92.50 to administer oaths; or
(b) By the signing of the written declaration prescribed in subsection (2).
(2) A written declaration means the following statement: "Under penalties of perjury, I declare that I have read the foregoing [document] and that the facts stated in it are true," followed by the signature of the person making the declaration, except when a verification on information or belief is permitted by law, in which case the words "to the best of my knowledge and belief" may be added. The written declaration shall be printed or typed at the end of or immediately below the document being verified and above the signature of the person making the declaration.
. . . .
(4) As used in this section:
. . . .
(b) The term "document" means any writing including, without limitation, any form, application, claim, notice, tax return, inventory, affidavit, pleading, or paper.
(c) The requirement that a document be verified means that the document must be signed or executed by a person and that the person must state under oath or affirm that the facts or matters stated or recited in the document are true, or words of that import or effect.
§ 92.525, Fla. Stat. (2005) (emphasis supplied).
Thus, the statute provides that, whenever "verification" (defined as the sworn, written confirmation of facts as true) of a "document," (which by definition includes "affidavits") is required by law or rule, it may be accomplished either by execution before a notary or by signing the statutorily specified declaration. Because section 948.06 requires an "affidavit," which is a "verified document," the alternative verification procedure authorized by section *1030 92.525(1)(b), is a permitted substitute for execution before a notary.
A central premise of my conclusion is that affidavits are, by definition, "verified documents." This is because section 92.525(4)(c) defines the "requirement" of "verifi[cation]" as including three elements: that the document be signed; that the signatory attest to the truth of the facts; and that the signatory give an oath or affirmation, each of which is also an essential element of an "affidavit." See also, Black's Law Dictionary (8th ed.2004) ("verify" means to confirm by oath or affidavit; "verification" means a formal declaration before a notary or, in some jurisdictions, without the need for a notary).[6]
Here, the requisite declaration was included in the "affidavit;" therefore, the lack of notarization had no affect on its validity. Accord Goines (applying section 92.525 to section 948.06); see also Shearer (Rule 3.987 form of oath requiring notary satisfied by section 92.525 verification); State Dep't of Highway Safety & Motor Vehicles v. Padilla, 629 So.2d 180 (Fla. 3d DCA 1993) (section 92.525 "verified" document satisfied affidavit requirement of section 322.2615(2), Florida Statutes).
Although not argued in the bare-bones petition filed here, and left unresolved in Jackson, the majority bulwarks its opinion by further concluding that, the statutory-construction issue notwithstanding, the Fourth Amendment mandates that an affidavit for arrest warrant  including one seeking the arrest of a probationer for a probation violation  be sworn before a person authorized to administer oaths. I disagree with this conclusion for two reasons.
First, because Petitioner is a probationer who was arrested for a probation violation, he is not protected here by the Fourth Amendment. Griffin v. Wisconsin, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); Grubbs v. State, 373 So.2d 905 (Fla.1979). From a constitutional perspective, a warrant was not required to arrest petitioner. Grubbs, 373 So.2d at 908 (acknowledging constitutional propriety of section 948.06, which authorizes warrantless arrest of probationers for probation violations). See also, U.S. v. Cardona, 903 F.2d 60 (1st Cir.1990) (warrant not required by Fourth Amendment to arrest probationer in his home for probation violation, even absent exigent circumstances). Therefore, Petitioner should not be heard to complain about defects in a constitutional procedure to which he has no entitlement.
Second, because the "affidavit" here was given under penalty of perjury, it comported with the "oath or affirmation" requirement of the Fourth Amendment. United States v. Bueno-Vargas, 383 F.3d 1104 (9th Cir.2004). In Bueno-Vargas, the court addressed the sufficiency of a non-notarized, faxed verification  given pursuant to a federal statute similar to section 92.525  under the Fourth Amendment's *1031 Oath or Affirmation Clause.[7] It concluded that "signing a statement under penalty of perjury satisfies the [Fourth Amendment] standard for an oath or affirmation." Id. at 1111. In reaching this conclusion, the court reasoned that the underlying purpose for the Fourth Amendment's Oath or Affirmation Clause is to protect the target of the warrant from "impermissible state action by creating liability for perjury ... for those who abuse the warrant process." Id. (quoting State v. Tye, 248 Wis.2d 530, 636 N.W.2d 473, 478 (2001)). Thus, held the court, the "true test" under the Fourth Amendment is whether the statement is given under penalty of perjury. Id. at 1110. Although Bueno-Vargas involved the federal procedure for detention after a warrantless arrest, rather than an application for an arrest warrant, this factual distinction has no legal significance because, as the Bueno-Vargas court noted, the constitutional standard for both procedures is the same. Id. at 1109.
I agree with the Bueno-Vargas court's analysis. It is the potential prosecution for perjury, if anything, that will dissuade an otherwise deceitful affiant from giving a false declaration to obtain a warrant. The largely ritualistic appearance before a notary public is not likely to further the constitutional goal of protecting the warrant's target from impermissible and unjustifiable intrusion by the state. See United States v. Turner, 558 F.2d 46 (2d *1032 Cir.1977) (common law ritual of personal appearance before judge not mandated by constitution; oral, telephonic application for warrant, although less solemn, is constitutionally permissible). Because a section 92.525 declaration is made under penalty of perjury, its use in this manner does not violate the Fourth Amendment.
Although the Florida Constitution, Article 1, section 12, also relied upon by the majority, is worded differently than the Fourth Amendment, my conclusion under this provision is the same because the courts are required to construe it in consonance with the Fourth Amendment. Grose v. Firestone, 422 So.2d 303 (Fla. 1982). Likewise, Florida Rule of Criminal Procedure 3.120 does not necessitate a contrary conclusion because that rule simply "conforms to the Fourth Amendment requirement that probable cause be supported by `oath or affirmation.'" Kephart v. Regier, 30 Fla. L. Weekly S182, 183, ___ So.2d ___, ___, 2005 WL 673681 (Fla. Mar. 24, 2005). Moreover, the clear import of Shearer is that section 92.525 applies to rules of criminal procedure that specify a particular type of oath. As is evidenced by the dissent in Shearer, the court rejected the argument that the form of an oath is a matter of pure procedure within the exclusive rulemaking authority of the supreme court. Although, as the majority notes, the district courts have not extended Shearer to rules of criminal procedure that do not relate to postconviction relief, none have declined an invitation to apply its unambiguous holding in other contexts. In this case, where the application of section 92.525 to rule 3.120 is entirely consistent with the Fourth Amendment and Florida Constitution, I see no basis upon which to distinguish Shearer.
Because the original affidavit used here was a statutorily sanctioned substitute for a notarized affidavit, a procedure that does not contravene the seizure clauses of the federal and state constitutions or implementing rule, I concur in the result reached by the majority in denying the petition. Despite the scholarly case Judge Sawaya makes for the majority, however, I do not agree that the "good faith exception" fits the circumstances of this case.
The exclusionary rule of evidence mandates the suppression of tangible and intangible evidence obtained in violation of the Constitution. The "good faith exception," when applicable, simply avoids the consequence of the exclusionary rule. Had evidence, such as physical evidence or a confession, been obtained incident to the arrest of Petitioner, the exclusionary rule and exception might come into play. Here, however, Petitioner does not seek to exclude evidence under the exclusionary rule; therefore, the exception has no place.
The issue in this case is simply whether the state properly invoked the tolling provision contained within section 948.06(1), Florida Statutes (2005), by filing an "affidavit." See Stambaugh, 891 So.2d at 1139 (for tolling provisions to apply, state must both file an affidavit and obtain a warrant). If the majority is correct on this technical point, the state never filed an "affidavit" because the document, however labelled, was, by definition, not an affidavit. Therefore, if I were to agree with the majority that the affidavit was defective, I would have no choice but to conclude that, because Petitioner's probation expired before an amended affidavit was filed, the lower court lost jurisdiction to proceed. Id.
PLEUS, C.J., ORFINGER and MONACO, JJ., concur.
NOTES
[1] Citation is made to the 2003 version of section 948.06, Florida Statutes, because at the time the warrant was signed in early 2004, the changes to section 948.06 appearing in the 2004 bound volume of Florida Statutes had not yet taken effect. See Ch. 2004-11, § 50, Laws of Fla. (effective October 1, 2004); Ch. 2004-373, §§ 27, 28, 41, Laws of Fla. (effective July 1, 2004).
[2] It is the execution of the arrest warrant that is the operative event that sets the revocation process in motion to toll the running of the probationary period, not the filing of the affidavit. State v. Boyd, 717 So.2d 524 (Fla. 1998); Shropshire v. State, 775 So.2d 349, 350 (Fla. 2d DCA 2000) ("The mere filing of an affidavit of probation is insufficient to ensure retention of jurisdiction by the trial court over a defendant to revoke his probation. Instead, the arrest warrant that ensues from the affidavit of violation of probation must be delivered for execution before the probationary period expireseven when the affidavit of violation of probation itself is filed within the probationary period.") (citations omitted); Tatum v. State, 736 So.2d 1214, 1215 (Fla. 1st DCA 1999) ("As the supreme court's answer to the question posed by this court in Boyd clearly establishes, when the affidavit alleging a violation of probation or community control is filed is legally irrelevant; the determinative event for purposes of commencing the revocation process is delivery of the arrest warrant to the sheriff for execution."); Paulk v. State, 733 So.2d 1096, 1097 (Fla. 3d DCA) ("Therefore, even though the Affidavits of Violation of Probation were filed within the probationary period, the `probation revocation process' as defined in Boyd was not set in motion within that period, and the county court did not have jurisdiction over these revocation proceedings."), review denied, 744 So.2d 457 (Fla. 1999). In response to the decision in Boyd, the Legislature amended section 901.02(1), Florida Statutes, to make clear that the arrest warrant is issued when signed by the judge. See Morgan v. State, 757 So.2d 618, 620 n. 1 (Fla. 2d DCA 2000). Nevertheless, the amendment to section 901.02(1) did not change the holding in Boyd that the triggering event is issuance of the warrant, not the affidavit. See Baroulette v. McCray, 904 So.2d 575 (Fla. 3d DCA 2005); Stambaugh v. State, 891 So.2d 1136, 1139 (Fla. 4th DCA 2005); Howard v. State, 883 So.2d 879, 880 (Fla. 4th DCA 2004).
[3] The reference to "affidavit or sworn complaint" in Kephart v. Regier, 30 Fla. L. Weekly S182, ___ So.2d ___, 2005 WL 673681 (Fla. Mar. 24, 2005), is not significant to the issue before us. Adverting once again to the committee notes for Rule 3.120, the reader will see that the rule identifies "the initiating instrument as a `complaint,' thus adopting the federal terminology which is more meaningful and modern." Rule 3, Federal Rules of Criminal Procedure, which is the counterpart to Rule 3.120, also refers to "complaint," and the federal decisions applying Rule 3 clearly state that "[t]he purpose of the complaint ... is to enable the appropriate magistrate ... to determine whether the `probable cause' required to support a warrant exists." Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); Gaither v. United States, 413 F.2d 1061, 1076 (D.C.Cir. 1969) ("The principal function of a complaint `is as a basis for an application for an arrest warrant.' The sworn complaint enables the magistrate to determine whether or not probable cause exists to issue a warrant of arrest."). This is the very purpose of an arrest affidavit, and it is therefore evident that the complaint and affidavit are one in the same under both rules. Moreover, it would make little sense to say that a complaint must be sworn to before a person authorized to administer oaths, but an affidavit, which fulfills the same purpose, does not.
[4] See also State ex rel. Wilson v. Quigg, 154 Fla. 348, 17 So.2d 697, 701 (1944) ("[S]tatutes authorizing searches and seizures must be strictly construed, and affidavits made and search warrants issued thereunder must strictly conform to the constitutional and statutory provisions authorizing their making and issuance.") (citations omitted); Gildrie v. State, 94 Fla. 134, 113 So. 704, 705 (1927) ("`When searches and seizures are made pursuant to the command of a search warrant[,] both the search warrant and the prerequisite oath or affirmation required for it must conform strictly to the constitutional and statutory provisions authorizing their issue.'") (quoting Jackson v. State, 87 Fla. 262, 99 So. 548, 549 (1924)); Hesselrode v. State, 369 So.2d 348, 350 (Fla. 2d DCA 1979) ("It has been long well-settled law that statutes authorizing searches and seizures must be strictly construed and affidavits and search warrants issued thereunder must strictly conform to the constitutional and statutory provisions authorizing their making and issuance.") (citations omitted), cert. denied, 381 So.2d 766 (Fla. 1980).
[5] In defense of the trial judge, Jackson, by permitting the amendment after remand, was confusing.
[6] In her concurring opinion, Judge Griffin necessarily acknowledges that section 92.525 is intended to apply to some affidavits, because the statutory definition of "document" includes affidavits. She argues, however, that only something called a "verified affidavit" is intended to fall within the ambit of section 92.525, and she cites an isolated reference wherein the legislature has used this phrase in another statute. Perhaps the use of the word "verified" as a modifier to the word "affidavit," due to its redundancy, is simply the product of imprecise writing by a legislative scrivener. Nevertheless, the fact remains that section 92.525, when given its plain meaning from the unambiguous, broadlyworded text, leads inescapably to the conclusion that the statute is intended to provide an alternative to the notarized form of oath.
[7] 28 U.S.C. § 1746 provides:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
. . . .
(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
 (Signature)".
Numerous decisions have concluded that a "verification" under this statute is the equivalent of an "affidavit." See, e.g., Burgess v. Moore, 39 F.3d 216, 218 (8th Cir.1994) (documents signed under penalty of perjury satisfy affidavit requirements in federal proceedings); Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686 (1st Cir.1993) (non-notarized document substitute for affidavit in summary judgment proceeding); Trammell Real Estate v. Trammell, 748 F.2d 1516 (11th Cir.1984) (verified bill of costs authorized substitute for affidavit required by rule); Williams v. Browman, 981 F.2d 901 (6th Cir.1992) (non-notarized verification same as affidavit for summary judgment proceeding); Carter v. Clark, 616 F.2d 228 (5th Cir.1980) (non-notarized document substitute for affidavit in federal proceedings notwithstanding contrary local rule); Uncle Henry's Inc. v. Plaut Consulting Inc., 240 F.Supp.2d 63 (D.Me.2003) (affidavits need not be notarized to be cognizable for summary judgment so long as they are made under penalties of perjury pursuant to 28 U.S.C. § 1746); Hameed v. Pundt, 964 F.Supp. 836 (S.D.N.Y.1997) (non-notarized declarations admissible in support of summary judgment motion); Kersting v. U.S., 865 F.Supp. 669 (D.Hawai'i 1994) (verification acceptable substitute for affidavit in support of motion for new trial); see also People v. Sullivan, 56 N.Y.2d 378, 452 N.Y.S.2d 373, 437 N.E.2d 1130, 1133 (N.Y.1982) (where court observed that statements expressly made under penalty of perjury possibly provided greater assurance against misstatement than routine of swearing before a notary); Galvin v. Town Clerk of Winchester, 369 Mass. 175, 338 N.E.2d 834, 836 (1975) (statement containing written declaration made under penalty of perjury, under state statute, satisfies requirement of an "affidavit").