# Supreme Court of Florida

_____

No. SC15-2125
_____

**CHRISTOPHER L. CARPENTER,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[June 29, 2017]

LEWIS, J.

Christopher L. Carpenter seeks review of the decision of the First District

Court of Appeal in State v. Carpenter, 158 So. 3d 693 (Fla. 1st DCA 2015), on the

basis that it expressly and directly conflicts with the decision of the Second District

Court of Appeal in Willis v. State, 148 So. 3d 480 (Fla. 2d DCA 2014), on a

question of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

## FACTS AND BACKGROUND

On April 2, 2013, Carpenter was charged with one count of traveling to meet

a minor to commit an unlawful sex act, one count of soliciting a minor to commit

an unlawful sex act, and three counts of transmission of material harmful to a

minor.  At the time of the incident, law enforcement already had extensive evidence that Carpenter, who was twenty-eight years old, had engaged, through e-mail and text message, in a series of sexually explicit conversations in response to a Craigslist ad with an undercover officer posing as a fourteen-year-old girl.  These conversations ultimately resulted in Carpenter and the undercover officer planning to meet.  Upon his arrival at the agreed-upon address, officers arrested Carpenter.

At the time of Carpenter's arrest, the arresting officers conducted a search incident to arrest and seized his cell phone, separating Carpenter from the cell phone.  These officers then transported the cell phone in a special protective covering to a specialty technician who later entered into and searched the phone at a distant location without first obtaining a warrant.  Sexually explicit text messages and photos were found on the seized cell phone.

Carpenter filed a motion to suppress the evidence found on his cell phone, relying on Smallwood v. State (Smallwood II), 113 So. 3d 724 (Fla. 2013), to support his assertion that the warrantless search of his cell phone violated his Fourth Amendment rights.

At the suppression hearing, Investigator Josh Scioners testified that he performed the forensic examination of Carpenter's cell phone.  Scioners also testified that cell phones present issues with regard to the potential for the contents to be removed or destroyed remotely, thus necessitating turning off the device or

using a Faraday bag, which blocks any signals from coming in or out of the device. While Faraday bags do help prevent the cell phone's data from being remotely erased, these bags are not a guaranteed method of data protection and the cell phone still must be removed from the Faraday bag to be examined, risking that the data be compromised. Investigator Scioners further testified that he relied on Smallwood v. State (Smallwood I), 61 So. 3d 448 (Fla. 1st DCA 2011), when he searched Carpenter's phone. He did, however, note that it would have taken a short time to obtain a warrant and that Carpenter would likely not have had the opportunity to make any calls while he was detained in the patrol car or initially transported to the station.

After the suppression hearing, the trial court granted Carpenter's motion to suppress, relying on the holding in Smallwood II that warrantless cell phone searches are unconstitutional. The First District reversed, relying on Davis v. United States, 564 U.S. 229 (2011), to support the position that, because the officers were relying in good faith on the holding in Smallwood I, the appellate precedent at the time of the search, the evidence recovered from Carpenter's cell phone was not subject to the exclusionary rule because the good-faith exception applied.[1] Carpenter, 158 So. 3d at 697. This review follows.

_____

1. Willis also involved a warrantless cell phone search conducted after Smallwood I but before Smallwood II. The Second District found that the warrantless search at issue was permitted at the time because Smallwood I was a

## ANALYSIS

In <u>Davis</u>, the United States Supreme Court announced the application of the good-faith exception to the exclusionary rule in cases where officers have reasonably relied on binding appellate precedent when conducting a search, even when that appellate precedent is later overruled and the search is deemed to be unconstitutional. 564 U.S. at 232. <u>Davis</u> involved the search of a vehicle passenger compartment after the police had removed the individuals from the vehicle and secured two arrestees in the back of patrol cars. <u>Id.</u> at 235. The

---

decision then binding in Florida under <u>Pardo v. State</u>, 596 So. 2d 665 (Fla. 1992). <u>Willis</u>, 148 So. 3d at 482.

The Second District nevertheless noted that the case law with regard to what constitutes "binding appellate precedent" permitting "objectively reasonable reliance" was still unsettled. <u>Id.</u>

> The rule in <u>Pardo</u> was created to establish consistency within Florida law in light of our unique system in which the intermediate appellate courts are intended to be the normal final courts of review. . . . But an opinion from a single district court is not binding on another district court in Florida. We are not inclined to believe that the rule announced in <u>Pardo</u> should be used in the Fourth Amendment context to determine whether evidence from a warrantless search is admissible.

<u>Id.</u> at 482-83 (citations omitted). The Second District expressed its doubts that the rule announced in <u>Pardo</u> was intended to establish that "one recent decision from another Florida district court of appeal on such a controversial issue [was sufficient] to create 'binding precedent,' at least in other districts, for purposes of the good-faith exception as announced in <u>Davis</u>." <u>Id.</u> at 483. Thus, the Second District in <u>Willis</u> found that the good-faith exception to the exclusionary rule did not apply. <u>Id.</u>

officers, in conducting the search, were relying on the United States Supreme Court's holding in New York v. Belton, 453 U.S. 454, 459 (1981), which had been utilized and controlling for almost thirty years, and which held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Davis, 564 U.S. at 233 (quoting Belton, 453 U.S. at 459-60). For almost thirty years, courts across the United States had uniformly read Belton's holding as authorizing vehicle searches incident to arrest, regardless of whether the arrestee was secured in a patrol car or within reaching distance of the vehicle. Id.

While Davis's appeal was pending in the United States Court of Appeals for the Fourth Circuit, the United States Supreme Court released its decision in Arizona v. Gant, 556 U.S. 332 (2009), which created a new rule that limited Belton's holding. In discussing the new Gant decision, the Supreme Court emphasized in Davis that the exclusionary rule's purpose is to deter future Fourth Amendment violations: "For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." Davis, 564 U.S. at 237.

The Supreme Court explained that Davis's claim turned on the lack of police culpability, and determined that penalizing officers for continuing to follow the then-binding law, which had been clearly controlling for almost thirty years at the

time of the search, would not have the requisite deterrent effect needed to justify exclusion.  <u>Id.</u> at 240-41.

> About all that exclusion would deter in this case is conscientious police work.  Responsible law-enforcement officers will take care to learn "what is required of them" under Fourth Amendment precedent and will conform their conduct to these rules.  But by the same token, when binding appellate precedent specifically <u>authorizes</u> a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities.  An officer who conducts a search in reliance on binding appellate precedent does no more than " 'ac[t] as a reasonable officer would and should act' " under the circumstances.  The deterrent effect of exclusion in such a case can only be to discourage the officer from " 'do[ing] his duty.' "
>
> That is not the kind of deterrence the exclusionary rule seeks to foster.  We have stated before, and we reaffirm today, that the harsh sanction of exclusion "should not be applied to deter objectively reasonable law enforcement activity."  Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule.

<u>Id.</u> at 241 (emphasis and alterations in original) (citations omitted).  Thus, the Supreme Court in <u>Davis</u> held that the good-faith exception to the exclusionary rule applied when officers acted with objectively reasonable reliance on binding judicial precedent that had been in place and followed for almost thirty years.

The State and our dissenting colleagues in this case seek to expand <u>Davis</u> to the significantly different facts here.  We reject that expansion.

In <u>Davis</u>, the officers, in conducting the later-invalidated search, were relying on the 1981 holding in <u>Belton</u>, which had been the law from the United States Supreme Court for almost <u>thirty years</u> and had been uniformly applied

- 6 -

across the country before <u>Gant</u> was decided in 2009.[2]  Conversely, <u>Smallwood I</u> was decided on April 29, 2011, and was under active consideration by this Court when the search of Carpenter's cell phone was conducted on June 14, 2012. Unlike the law under <u>Belton</u>, which had been in force for almost thirty years when the officers in <u>Davis</u> relied on <u>Belton</u>, the officers in this case were relying on an opinion that was not only not well-established, but on the face of the <u>Smallwood I</u> opinion, doubt was expressed and the case was certified to this Court for final Florida consideration.  Moreover, the Second District's decision in <u>Willis</u>, holding that the exclusionary rule applied to a warrantless cell phone search, further fuels the notion that the issue of warrantless cell phone searches was a significant and still-developing area of law and thus not one that the officers should have relied upon as being well-established precedent under <u>Davis</u>.  <u>See</u> <u>Willis</u>, 148 So. 3d at 482.

The holding in <u>Davis</u> was logical, based on the longstanding, thirty-year precedent that had been overruled by <u>Gant</u>.  The State, however, asks us to expand <u>Davis</u> to a case where the facts present a highly uncertain area of law and the precedent relied upon demonstrates on its face that it was certified to a higher court for resolution.  The face of the opinion reflected this status.  The State's attempt to

_____

2.  In fact, a cursory search of Westlaw reveals at least 3,086 cases referencing <u>Belton</u> from the time of its release until the release of <u>Gant</u>.

- 7 -

cherry pick favorable parts of a district court of appeal opinion while ignoring other portions of that same opinion defies logic and expands <u>Davis</u> in a way that we cannot endorse.

Recognizing the rapidly developing nature of technology, the First District in <u>Smallwood I</u> expressed its concern with the holding, which would permit warrantless cell phone searches, and thus certified the question to this Court for final resolution as one of great public importance. 61 So. 3d at 461-62. In expressing its unease, however, the First District was clearly satisfying the state-required procedural hurdle of issuing a decision for this Court to exercise jurisdiction to review and decide the issue, rather than issuing a final ruling that was contemplated to be the final Florida determination on the matter of warrantless cell phone searches. As we explained in <u>Floridians for a Level Playing Field v. Floridians Against Expanded Gambling</u>,

> In order to have discretionary jurisdiction based on a certified question, there are essentially three prerequisites that must be met. First, it is essential that the district court of appeal pass upon the question certified by it to be of great public importance. . . . <u>Second, there must be a district court "decision" to review.</u> <u>See</u> art. V, § 3(b)(4), Fla. Const. For instance, where a district court is unable to reach a clear majority decision on an issue and elects to certify a question without resolving the merits, we are without jurisdiction to answer such a question under article V, section 3(b)(4) of the Florida Constitution. . . . Third, . . . the question must be in fact "certified" by a majority decision of the district court.

- 8 -

967 So. 2d 832, 833 (Fla. 2007) (footnote omitted) (emphasis added); see also art. V, § 3(b)(4), Fla. Const. (The Florida Supreme Court "[m]ay review any decision of a district court of appeal that passes upon a question certified by it to be of great public importance . . . ." (emphasis added)). Thus, absent issuing an actual decision, the First District would not have been able to certify the question to this Court for final consideration and determination.

Furthermore, in the Smallwood I opinion, the First District certified the precise question to this Court with regard to the new subject of cell phone searches as one of great public importance, thus placing law enforcement officers on actual notice that the case was subject to further consideration on the face of the opinion. 61 So. 2d at 462. Until this Court issued either an order declining review or an opinion deciding the issue, Smallwood I was not final, well-settled, unequivocal, or clearly established. See Davis, 564 U.S. at 251 (Sotomayor, J., concurring in judgment); see also United States v. Sparks, 711 F.3d 58, 64-66 (1st Cir. 2013) (elaborating on the meaning of "well-settled law"); United States v. Lee, 862 F. Supp. 2d 560, 568-69 (E.D. Ky. 2012) (stating that officers must rely on unequivocal and well-settled decisions of binding legal authority); Willis, 148 So. 3d at 483 n.2 ("[W]hen a Fourth Amendment issue is rapidly evolving, it is hard to justify an approach to the good-faith exception that allows the first defendant to reach the United States Supreme Court to receive the benefit of the exclusionary

rule while other defendants in the legal pipeline do not.").  While the State relies on Pardo to argue the binding nature of the Smallwood I decision, it misapplies Pardo's underlying premise from a different context that an opinion from a Florida district court of appeal is not final if it is still being reviewed by this Court.  See Pardo, 596 So. 2d at 666 ("This Court has stated that '[t]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by this Court.' " (emphasis added)).  In fact, the rule announced in Pardo was not designed or intended to describe the parameters of Fourth Amendment search and seizure law, especially for a case pending review in this Court; rather, it was a rule geared toward promoting judicial convenience in Florida's uniquely constructed judicial system.  E.g., Willis, 148 So. 3d at 483 ("We are not inclined to believe that the rule announced in Pardo should be used in the Fourth Amendment context to determine whether evidence from a warrantless search is admissible.").  Moreover, while an opinion from a district court of appeal may be binding on lower trial courts in Florida under a Pardo theory, this fact does not necessarily justify law enforcement's reliance on that decision as "binding" law authorizing a warrantless cell phone search, especially when on actual notice of the pending review in this Court.  Indeed, this issue can be likened to that of Schrödinger's Cat, where a decision of a district court of appeal may be both binding and not binding,

- 10 -

while under review in this Court, until a decision is rendered by this Court ultimately answering the question.

Additionally, <u>Davis</u> made clear that the exclusionary rule is only to be applied if the underlying deterrent effect on law enforcement will be achieved, which was found not to be the case in <u>Davis</u>. 564 U.S. at 237 ("Where suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.' " (quoting <u>United States v. Janis</u>, 428 U.S. 433, 454 (1976))). In Carpenter's case, however, suppression <u>would</u> further the exclusionary rule's intended deterrence because law enforcement officers would now, in areas of unsettled law, be reminded to err on the side of caution by obtaining a search warrant instead of relying on nonfinal, unsettled questions of law still under active review in this Court. The "conscientious police work" discussed in <u>Davis</u> requires that officers not engage in warrantless searches unless <u>clearly authorized</u> by law to do so. Thus, if the law on a particular issue is still developing, it is not reasonable for officers to rely on questionable decisions in pipeline cases to justify warrantless searches when the nonfinal nature of the decision is noted on the face of the opinion. Our conclusion is again buttressed by the Second District's opinion in <u>Willis</u>. Relying on an opinion still under review in this Court on an unsettled area of law, when an opinion from another district court existed that came to the opposite conclusion,

furthers the notion that officers should have erred on the side of caution and obtained a warrant before searching Carpenter's cell phone.

Perhaps the most instructive aspect of Davis, for our purposes, is Justice Sotomayor's opinion concurring in judgment, which predicted the issue arising in the present case and explicitly stated that the holding in Davis did not answer the question of the good-faith exception's application to areas of law that were unsettled at the time of the search. Davis, 564 U.S. at 250-51 (Sotomayor, J., concurring in judgment). This is such a case. Aside from the national variation on the issue of warrantless cell phone searches incident to arrest, the very fact that the case on which the officers relied was under active review in this Court indicates that the law was not yet settled as to the issue of warrantless cell phone searches in Florida at the time of Carpenter's search for purposes of the Davis analysis. The First District's certified question to this Court only furthers the notion that the officers in Carpenter's case should not have relied on Smallwood I as being the final controlling judicial precedent in this area of constitutional law while the case was certified to this Court for final decision. Since the issue decided in Smallwood I was one concerning a rapidly developing area of unsettled law at the time of the officers' alleged reliance, the State's reliance on the United States Supreme Court's holding in Davis to justify the search is misplaced. Furthermore, the

dissent attempts to broadly force cases with vastly different facts into <u>Davis</u>'s application, which is precisely what Justice Sotomayor predicted would happen.

Finally, in determining whether exclusion is warranted in this case, we must determine whether the deterrent benefits of exclusion outweigh the heavy societal costs.

> If, as the Government argues, all rulings resolving unsettled Fourth Amendment questions should be nonretroactive, then, in close cases, law enforcement officials would have little incentive to err on the side of constitutional behavior. Official awareness of the dubious constitutionality of a practice would be counterbalanced by official certainty that, so long as the Fourth Amendment law in the area remained unsettled, evidence obtained through the questionable practice would be excluded only in the one case definitively resolving the unsettled question.

<u>Davis</u>, 564 U.S. at 250-51 (Sotomayor, J., concurring in judgment) (quoting <u>United States v. Johnson</u>, 457 U.S. 537, 561 (1982)); <u>see also</u> <u>Lee</u>, 862 F. Supp. 2d at 569 ("If law enforcement could 'rely on non-binding authority . . .' officers would 'beg forgiveness rather than ask permission in ambiguous situations involving . . . basic civil rights.' " (citations omitted)). The scenario described above is the exact scenario at issue in Carpenter's case. Holding that the good-faith exception applies when officers rely on developing law that facially demonstrates the status of further review is a slippery slope which essentially abrogates the exclusionary rule in cases concerning unsettled law. The deterrent benefits of exclusion in Carpenter's case outweigh the societal costs because exclusion reminds law

- 13 -

enforcement officers that warrantless searches are the exception to the rule and that this exception should only be used when <u>specifically authorized</u> by law. The rule on searches in questionable areas of law is simple and unequivocal: Get a warrant. <u>See</u> <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 454-55 (1971) ("[T]he most basic constitutional rule in this area is that '<u>searches conducted outside the judicial</u> <u>process, without prior approval by judge or magistrate, are per se unreasonable</u> <u>under the Fourth Amendment—subject only to a few specifically established and</u> <u>well-delineated exceptions</u>.' " (emphasis added)); <u>see also</u> <u>Riley v. California</u>, 134 S. Ct. 2473, 2493 (2014) ("Our cases have historically recognized that the warrant requirement is 'an important working part of our machinery of government,' not merely 'an inconvenience to be somehow "weighed" against the claims of police efficiency.' " (quoting <u>Coolidge</u>, 403 U.S. at 481, 491)).

Therefore, contrary to the dissent, we hold that, under <u>Davis</u>, the good-faith exception to the exclusionary rule does not apply to Carpenter's case because the officers were not relying on the type of longstanding, thirty-year appellate precedent at issue in <u>Davis</u>, but rather on a non-final, pipeline case still under active review in this Court at the time of the search.

**CONCLUSION**

Accordingly, we disapprove the First District's decision below in <u>Carpenter</u> and hold that the good-faith exception to the exclusionary rule does not apply to

the officers' warrantless search of Carpenter's cell phone in this case. Moreover, although Willis reached the correct result, we do not adopt the reasoning used in reaching that result. As such, we disapprove of the opinion in Willis to the extent that it conflicts with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, and QUINCE, JJ., concur.
LAWSON, J., dissents with an opinion, in which CANADY and POLSTON, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

LAWSON, J., dissenting.

I respectfully dissent. Article I, section 12, of the Florida Constitution, as amended in 1982, mirrors the protection against unreasonable searches and seizures found in the Fourth Amendment, but also mandates that this protection "shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court." Id.[3] Clearly, we are bound by the United States Supreme Court's Fourth Amendment jurisprudence, including the majority opinion in Davis v. United States, 564 U.S. 229 (2011).

---

3. "The commentary to the 1982 amendment states that the amendment was necessary to modify the exclusionary rule [in Florida] and to allow adherence by the Florida courts to the good faith exception adopted by the federal courts." Crain v. State, 914 So. 2d 1015, 1022-23 (Fla. 5th DCA 2005) (en banc).

In <u>Davis</u>, the United States Supreme Court held that the exclusionary rule is not to be applied "when the police conduct a search in objectively reasonable reliance on binding judicial precedent." <u>Id.</u> at 239, 241. The majority mistakenly fails to follow this binding precedent and, instead, applies the analysis in Justice Sotomayor's separate opinion, in which she expresses her <u>disagreement</u> with the rule announced by the six-person <u>Davis</u> majority but explains that she would nevertheless reach the same result in <u>Davis</u>, given the facts of that case. By "facts," here, I mean the state of the law at issue in <u>Davis</u>. In other words, Justice Sotomayor would have excluded the evidence in that case if the law relied upon by police was merely "binding precedent," but agreed to application of the "good faith exception" in <u>Davis</u> because the law in question had also become well-settled. <u>See</u> <u>id.</u> at 250 (Sotomayor, J., concurring in judgment). That is the analysis of our majority here. However, we are bound to follow <u>Davis</u>, which properly fashioned a different rule—one grounded in the <u>Davis</u> majority's clear understanding of the purpose and limits of the exclusionary rule, as well as the interests at stake.

As explained in <u>Davis</u>:

> The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. The Amendment says nothing about suppressing evidence obtained in violation of this command. That rule—the exclusionary rule—is a prudential doctrine, created by this Court to compel respect for the constitutional guaranty. Exclusion is not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search. The

rule's sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations. Our cases have thus limited the rule's operation to situations in which this purpose is thought most efficaciously served. Where suppression fails to yield appreciable deterrence, exclusion is clearly unwarranted.

Id. at 236-37 (internal citations, quotation marks, and quotations omitted). The

Davis majority further explained that, although "[r]eal deterrent value is a

necessary condition for exclusion, . . . it is not a sufficient one." Id. at 237

(internal quotation omitted). This is the critical juncture at which our majority, like

Justice Sotomayor, diverges from the opinion of the Court in Davis in its

philosophical view as to how the exclusionary rule should be applied. Both would

prefer a rule grounded solely in deterrence of potential Fourth Amendment

violations. But, as explained in Davis:

> The analysis must also account for the substantial social costs generated by the rule [because] [e]xclusion exacts a heavy toll on both the judicial system and society at large. It almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence. And its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment. Our cases hold that society must swallow this bitter pill when necessary, but only as a last resort. For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs.

Id. (internal citations and quotation marks omitted).

Factoring in the reality of these societal costs, the United States Supreme

Court's focus has shifted from the deterrent effect of exclusion to "the flagrancy of

the police misconduct at issue." Id. at 238 (internal quotation omitted). Given that

- 17 -

focus, it is easy to see why the United States Supreme Court chose the rule that it did in this context over the rule that Justice Sotomayor and our majority prefer: There is simply no way that reliance on binding legal precedent—whether well-settled or not—can be cast as police misconduct, much less "flagrant" police misconduct.

The officer in this case relied upon case law that bound every trial court in Florida. The fact that the opinion had been issued by an intermediate appellate court, or that the appellate court had certified the question to our Court, does not change the relevant "facts": (1) at the time of the search in this case, only one Florida appellate court had addressed the issue; (2) this sole appellate opinion held that no warrant was needed to search the contents of a cell phone lawfully seized incident to a valid arrest; and (3) this law was binding precedent throughout the State of Florida. Pardo v. State, 596 So. 2d 665, 666 (Fla. 1992) (holding that decisions of a district court of appeal constitute binding appellate precedent and "represent the law of Florida unless and until they are overruled by this Court" (internal quotation omitted)).

Our majority's attempted explanation of the Davis majority opinion as also justified based upon the "well-settled" understanding of the "search incident to arrest" rule announced in New York v. Belton, 453 U.S. 454 (1981), is simply not plausible. Although Davis recognized that Belton was "[f]or years . . . widely

understood to have set down a simple, bright-line rule," Davis, 564 U.S. at 233, the Davis majority pointed out that "[n]ot every court . . . agreed with this reading of Belton," id. at 234. However, the only contrary case cited by the Davis majority, State v. Gant, 162 P.3d 640 (Ariz. 2007), aff'd, Arizona v. Gant, 556 U.S. 332 (2009), was decided approximately three months after Mr. Davis's arrest "[o]n an April evening in 2007 . . . in Greenville, Alabama." Davis, 564 U.S. at 234-35. Clearly, the Davis majority could have framed the issue as preferred by Justice Sotomayor with the same result.

Instead, the Davis majority analyzed the issue based upon controlling precedent from the Eleventh Circuit Court of Appeals, which was binding in the Middle District of Alabama, where and when the search occurred. Id. at 235, 239-40. The Court ultimately concluded that because police conducted the search in reliance upon "binding judicial precedent" in their federal district, the "absence of police culpability dooms Davis's claim [that the exclusionary rule should apply]." Id. at 239-40. Were we to apply this same analysis here, we would disapprove the Second District's opinion and approve the First District's opinion—and the evidence in this case would not be suppressed.

Finally, it is worth noting that our majority's opinion is antithetical to a significant proposition underlying the good-faith exception, which is also addressed by the Davis majority: the exclusionary rule should not be used to

penalize an officer for judicial errors.  Id. at 241.  This is not a new or novel idea, but the very "rationale behind" the good-faith exception, beginning with the seminal United States Supreme Court case addressing the exception, United States v. Leon, 468 U.S. 897 (1984).  See State v. McGill, 125 So. 3d 343, 352 (Fla. 5th DCA 2013) ("The rationale behind the good faith exception is that the exclusionary rule 'is designed to deter police misconduct rather than to punish the errors of judges and magistrates.' " (quoting Leon, 468 U.S. at 916)).  It would defy logic to suggest that a rule designed to allow law enforcement to rely upon the judgment of a single magistrate would have the same law enforcement officer question a rule of law announced in precedent from the appellate court binding in his or her jurisdiction.  Cf. State v. Watt, 946 So. 2d 108, 110 (Fla. 5th DCA 2007) ("In order to reject the application of the good faith exception in this case, we would need to conclude that an objectively reasonable police officer would have a better understanding of the law of search and seizure and probable cause than did the trial judge who issued the warrant.").

In contrast to this Court's novel approach, the majority in Davis would encourage law enforcement officers to stay abreast of the law in their jurisdictions and govern themselves based upon the pronouncements in binding appellate precedent:

> About all that exclusion would deter in this case is
> conscientious police work.  Responsible law-enforcement officers will

- 20 -

take care to learn what is required of them under Fourth Amendment precedent and will conform their conduct to these rules. But by the same token, when binding appellate precedent specifically <u>authorizes</u> a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities. An officer who conducts a search in reliance on binding appellate precedent does no more than act as a reasonable officer would and should act under the circumstances. The deterrent effect of exclusion in such a case can only be to discourage the officer from doing his duty.

That is not the kind of deterrence the exclusionary rule seeks to foster. We have stated before, and we reaffirm today, that the harsh sanction of exclusion should not be applied to deter objectively reasonable law enforcement activity. Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule.

<u>Davis</u>, 564 U.S. at 241 (internal citations and quotation marks omitted).

We should apply <u>Davis</u>, as our Constitution requires, and hold that because the officers in this case acted in good-faith reliance on binding appellate precedent, the sexually explicit messages and images revealed during their search of Mr. Carpenter's cell phone are not subject to the exclusionary rule. Therefore, I dissent.

CANADY and POLSTON, JJ., concur.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

    First District - Case No. 1D13-6199

    (Bay County)

Ross A. Keene of Ross Keene Law, P.A., Pensacola, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, and Virginia Harris, Assistant Attorney General, Tallahassee, Florida,

for Respondent